IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **DEVINCHE JAVON ALBRITTON,** ) | |
| Plaintiff, ) | Civil Action No. 7:22cv306 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| **DAVID ANDERSON, et al.,** ) | By: Robert S. Ballou |
| Defendants. ) | United States District Judge |

Davinche Javon Albritton, a Virginia inmate proceeding *pro se*, has filed an Amended Complaint against the defendants under 42 U.S.C. § 1983, raising two claims:

(1) That defendants Virginia Department of Corrections (VDOC), Clarke, River North Correctional Center (RNCC), Anderson, and Phipps violated his rights under the First, Eighth, and Fourteenth Amendments of the U.S. Constitution, under the Americans with Disabilities Act (ADA), and under § 504 of the Rehabilitation Act, by denying Albritton's request to enroll in internet-based online law school classes provided by Southside Virginia Community College; and

(2) That defendants Anderson, Landry, Miller, Greer, Stanley, Colna, Hickman, McBride, and Bateman violated his First, Eighth, and Fourteenth Amendment rights by retaliating against him for filing prison complaints, grievances, and court actions.

The defendants have filed a Motion to Dismiss pursuant to FED R. CIV. P. 12(b)(6). Albritton has responded to that motion, and the matter is now ripe for decision. For the reasons stated below, I will dismiss Claim 1 in its entirety; I will deny the motion to dismiss the claim against Landry for filing a disciplinary report in retaliation for Albritton's exercise of his rights, but I will dismiss all other claims in Claim 2 and all remaining defendants.

I. BACKGROUND

A. Education Claim

In late March 2021, Albritton communicated with the Education Department at River North Correctional Center regarding his desire to further his college education through correspondence courses; he had also completed the federal application for financial aid known as FAFSA, hoping to receive a Pell Grant. Phipps, the principal of the education department wrote on April 7, 2021, "As we talked when I came to B-3 on Tuesday, I will assist you anyway I can." Plntf's Ex., ECF No. 15-1 at 9. On April 7, Albritton notified Phipps that Regent University would allow him to enroll, if someone at the jail could serve as his proctor and receive the lessons via email to provide to him. Phipps responded on April 15, 2021, that she could receive his assignments by email and asked Albritton to obtain the proctor form for her to complete.

On August 2, 2021, Albritton wrote Phipps to advise that his FAFSA had been accepted by two colleges, and he wished to enroll in online classes for criminal justice, preparing him to move towards a law degree. Phipps replied on August 5 that RNCC was not equipped to handle online internet classes, only correspondence courses. She also said that she had advised Southside Virginia Community College that RNCC could not accommodate online courses over the internet. *Id.* at 11.

Albritton was upset about this turn of events, and he filed an informal complaint dated the same date, August 5, 2021. Phipps responded to the informal complaint on August 10, reiterating that enrollment in college courses would be approved if the school is accredited and participates in paper-based correspondence courses, as the facility did not have procedures permitting online courses at that time. *Id.* at 12. Albritton filed a regular grievance on August 12, 2021, but the grievance was treated as a request for services, was not logged as a grievance,

and was returned to him on August 23, 2021. *Id.* at 14. On August 25, 2021, Albritton wrote to the Regional Ombudsman objecting to RNCC's refusal to docket his grievance, to no avail. In the meantime, Albritton filed a Petition for Mandamus in the Supreme Court of Virginia on August 16, 2021, seeking an order allowing him to attend online classes. Def's Ex. 3, at 2, ECF No. 37-3. On October 18, 2021, the Office of the Attorney General filed a Motion to Dismiss the Petition for Mandamus, which was ultimately granted on May 18, 2022.

B. Retaliation Claim

Albritton was involved in ongoing litigation in other matters throughout 2021 and early 2022 in the Eastern District of Virginia, at least one of which arose from an alleged sexual assault on Albritton by a gang member at Sussex II State Penitentiary in April 2020. E.D. Va. Docket Sheets, Def's Ex. 1 and 2; Plntf's Ex. at 48. Some months after that assault, Albritton was transferred to RNCC. He states that he had advised personnel at RNCC of the situation at Sussex II and asked that he not be housed in the same cell with any active gang members. Plntf's Ex. at 37. That Ms. Greer, the PREA coordinator at RNCC, was aware of this incident is corroborated by correspondence between Greer and Albritton in June 2021. *Id.* at 40.

On November 5, 2021, RNCC assigned a registered gang member as Albritton's cell mate. Albritton immediately filed a grievance, stating that this assignment was retaliation for his pending lawsuits and explaining that his concern was related to his prior sexual assault. *Id.* at 37. The Warden, David Anderson, responded on November 17 that Albritton's grievance was properly a PREA complaint, which Anderson had forwarded to the PREA investigator and the PREA compliance manager. Albritton was extremely unhappy with that response, noting that the prior assault at Sussex II had already been investigated, but the level II appeal was denied. *Id.* at 38-39.

On December 31, 2021, Albritton filed a grievance alleging that staff was allowing gang members to control access to the offender telephone system, such that he was unable to access the phone. The grievance was denied on January 5, 2022, noting only that "phones are available during pod rec." *Id.* at 50. In his complaint, Albritton alleges that unnamed RNCC staff members told gang members that Albritton was the one who had complained about their control of the phones, and he was threatened with violence. The next day, January 24, 2022, Albritton wrote to Judge Wright-Allen, the judge presiding over his cases in the Eastern District of Virginia. In that letter, he stated that unnamed officials had threatened him to drop his Mandamus lawsuit, and when he refused, a gang member was placed in his cell. He also told her that "I am told that I must fight or die, because I filed lawsuit against the wrong people, so by the time you get this letter, I'll be in seg . . . I am ready to meet my God." *Id.* at 51.

On January 25, 2022, Albritton alleges that he was told by someone that he needed "to pay the piper or else for ratting on the homies." Am. Compl. at 10, ECF No. 15. As soon as the cell door opened for commissary, he approached the commissary officer and told him that he was in fear of his life and safety, and he told officer Parson the same thing. Officer Parson contacted Lt. Landry. When Landry arrived, Albritton told Landry he feared for his life and safety and that the gangs and his cellmate were going to harm him. Allegedly, Landry laughed and told Albritton to return to his cell "so he could see who would win, and to stop being a 'pussy.'" *Id.* Albritton states that he said he would not fight with his cell partner "for staff's amusement." *Id.* Landry then reported that Albritton disobeyed a direct order to return to his cell after receiving commissary. Capt. Miller signed off on the disciplinary offense report as the officer-in-charge. Plntf's Ex. at 53. Albritton was placed in disciplinary segregation until his hearing on February 14, 2022. Hearing Officer Stanley refused to consider Albritton's evidence that he was in fear

for his life and denied his request that Officer Parson be a witness, stating that Parson's testimony was irrelevant. *Id.* at 54. She found Albritton guilty and imposed 45 days loss of commissary as a penalty, which Albritton alleges was disproportionately high.

On or about February 24 or February 25, Albritton alleges that McBride, Colna, and Landry "admonished him about his continued filing of complaints and lawsuits against staff and that they could make things more difficult if he persisted in 'making trouble with court action.'" Am. Compl. at 11. The next day, Captain King and SIU Agent Acousta informed Albritton that SIU had intercepted a hit placed on him by RNCC gang members, and that SIU was investigating. *Id.*

On February 28, 2022, Albritton appealed his disciplinary conviction, arguing (as he had at the initial hearing) that he had told Landry he was in fear of his life and safety, because his cellmate was a registered gang member. He also advised that SIU had recently told him about a threat on his life by RNCC gang members. Plntf's Ex. at 56. Warden Anderson denied his appeal by letter dated March 28, 2022. *Id.* at 57. The regional administrator denied his next level appeal on June 6, 2022, noting that he had not provided any direct evidence of a "hit" placed on him. *Id.* at 63. Albritton requested reconsideration, providing a copy of the documentation from SIU, noting that he had not received the documentation until after his disciplinary appeal had been submitted. *Id.* at 64-65. A written complaint to SIU, dated April 6, 2022, verifies that at that point, Albritton had received no paperwork, nor had he been informed of the investigation's outcome. *Id.* at 66. No response to the request for reconsideration has been provided to the court.

When Albritton was released from segregation following the threat investigation, he remained without a cellmate for approximately 30 days. On March 31, 2022, a transgendered

5

person (male-to-female) was assigned as his cellmate. That same day, Albritton filed a complaint expressing his strong emotional and religious opposition to the assignment. He also alleged that the assignment was retaliatory. *Id.* at 60. Unit Manager Colna responded that the assignment was based on objective compatibility criteria and was not retaliatory in any way. Albritton then filed a formal grievance on April 11, 2022. B.S. Walls determined the grievance to be unfounded, noting that a VACORIS Cell Compatibility Assessment had determined the individual to be a compatible cell mate. *Id.* at 62. Eventually, before the current lawsuit was filed, Albritton's cellmate assignment was changed, such that he was no longer sharing a cell with a transgendered inmate.

## II. Discussion

A. Standard of Review

A motion to dismiss challenges the legal sufficiency of a complaint, considering the facts alleged to be true. *Francis v. Giacomelli*, 588 F.3d 186,192 (4th Cir. 2009). The facts alleged must be sufficient for the court to infer that the defendant is liable if those facts are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Pro se* complaints must be liberally construed and held to a less stringent standard than those drafted by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, legal conclusions, labels, and conclusory statements are not facts and will not save a claim that is not supported by facts. *Ashcroft*, 556 U.S. at 678–79.

To state a cause of action under § 1983, Albritton must allege facts showing that a person, acting under color of state law, violated his rights under the Constitution or laws of the United States.

B. <u>Claim 1: Denial of Access to Online College Classes</u>

Albritton alleges that VDOC, RNCC, Clarke, Anderson, and Phipps, have violated his rights under the First, Eighth, and Fourteenth Amendments of the Constitution and under the ADA and the Rehabilitation Act. At the outset, his claims against VDOC and RNCC must fail because VDOC, an agency, and RNCC, a prison facility, are not "persons" within the meaning of § 1983 and thus are not proper defendants. *McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 893–94 (E.D. Va. 1992). His claim against Clarke fails because he has not alleged any actions by Clarke, asserting only that Clarke is the Director of VDOC. Supervisory personnel are not vicariously liable for the acts of their subordinates in actions under § 1983, and in the absence of allegations of personal wrongdoing by Clarke, there is no valid claim against him. *Ashcroft*, 556 U.S. at 676. Albritton's constitutional claims against the other two named defendants fail because inmates have no constitutional right to educational programs. *Garrett v. Angelone*, 940 F. Supp. 933, 942 (W.D. Va. 1996) (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)); *Women Prisoners of D.C. Dep't of Corr.*, 93 F.3d 910, 927 (DC. Cir. 1996).

Nor can Albritton show any discrimination. No one at NRCC is permitted to enroll in online courses, so Albritton is not being treated any differently than other inmates at the facility. To succeed on an equal protection claim under the Fourteenth Amendment, an inmate must show that he was treated differently than others similarly situated. *Moss v. Clark*, 886 F.2d 686 (4th Cir. 1996). Albritton has not alleged, nor can he, that others at RNCC were allowed to take online classes. Nor can he demand a transfer to a facility that has internet access for online classes for inmates, because inmates "have no constitutional right to be housed in any particular prison or housing unit." *Garrett,* 940 F. Supp. at 942 (*Meachum v. Fano*, 427 U.S. 215 (1976)).

7

His claims under the ADA and the Rehabilitation Act must also fail, first because there is no discrimination, as discussed above. Second, Albritton is not disabled within the meaning of the ADA and the Rehabilitation Act. In his opposition to defendants' motion to dismiss, Albritton creatively argues that he is disabled by virtue of his status as a Virginia Department of Corrections inmate. Plntf's Br. in Opp. to Mot. to Dismiss at 6, ECF No. 42. Although Virginia Code § 8.01-2(6)(a) defines "person under a disability" for civil procedure purposes to include convicted felons while they are incarcerated, the context and purpose of the statute clearly indicate that "person under a disability" is not the same thing as a disabled person. "Person under a disability" also includes minors, incapacitated persons, unknown persons in cases involving real estate, and "any other person" deemed incapable of defending his legal rights because of physical or mental incapacity, including substance abuse." Va. Code § 8.01-2(6). Virginia Code § 8.01-9 requires appointment of a guardian ad litem for a person under a disability who is being sued, unless the person is already represented by an attorney. The Virginia statute is concerned with the protection of persons who are sued under circumstances when they may lack the ability to defend themselves in court. *Buchanan County, Va. v. Blankenship,* 406 F. Supp. 2d 642, 645 (W.D. Va. 2005). Virginia's state laws of civil procedure do not apply in federal court. *Id.*

Albritton also alleges violations of the ADA and the Rehabilitation Act, federal statutes. The ADA, which protects against discrimination in the private sector, defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The Rehabilitation Act prohibits discrimination against the handicapped by public agencies and by federally funded private organizations. The

8

Rehabilitation Act's definition of handicapped is "substantially identical" to the ADA definition of disability. *Smaw v. Comm. Of Va. Dep't of State Police*, 862 F. Supp. 1469, 1474 (E.D. Va. 1994). Albritton has not alleged that he has—or has ever had—any physical or mental impairment, much less one that substantially limits one or more major life activity, nor has he alleged that he is perceived as having such a disability. Because he is not disabled and because he has not been discriminated against, this claim against Anderson and Phipps fails. To the extent his complaint could be interpreted as challenging an educational policy of the VDOC, the claim also fails.

C. <u>Claim 2: Retaliation</u>

Albritton alleges four actions taken against him in retaliation for his filing of grievances and lawsuits: Assigning a gang member as his cellmate; telling gang members that Albritton had complained about them controlling the telephone; falsely charging Albritton with a disciplinary citation for refusing to enter his cell; and assigning him a transgender cellmate. Retaliation claims under § 1983 have three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity; (2) the defendant took an action that adversely affected that protected activity; and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. *Booker v. South Carolina Dep't of Corr.*, 855 F.3d 533, 537 (4th Cir. 2017).

Albritton's use of the grievance process and judicial system was and is protected First Amendment activity, the right to petition. Further, the right to be free from retaliation for exercising his First Amendment right to file grievances and lawsuits was a clearly established right at the time of all acts complained of. *Id.* at 544. Albritton's complaint has alleged sufficient facts to show the first element of his retaliation claims. I will now address each

9

alleged incident of retaliation to explain whether he has sufficiently pled his claims as to the other two elements.

1. Assigning a Gang Member as his Cellmate

Approximately two weeks after the Commonwealth filed a motion to dismiss Albritton's mandamus petition, a gang member was assigned as Albritton's cellmate, notwithstanding Albritton's express request that he not be housed with gang members after he was sexually assaulted by a gang member at Sussex I. He immediately filed a grievance, alleging retaliation. In his letter to Judge Wright-Allen of January 24, 2022, he also stated that a gang member had been placed in his cell because he refused to drop the mandamus petition, specifically saying he was told he must "fight or die." Plntf Exs. at 51, ECF No. 15-1. Such conduct, if proved, would certainly be an action that adversely affected Albritton. Both the timing of the conduct and the alleged demand that he drop the mandamus petition create a prima facie showing of a causal relationship between Albritton's protected First Amendment activity and that adverse action against him. *See DeFour v. Webber*, No. 7:22cv00379, 2023 WL 6149279, at *13 (W.D. Va. Sept. 20, 2023). However, Albritton has not identified a person who committed this act. He does not say who told him to drop the mandamus petition, and he does not tell us when and where this conversation occurred. He does not say who made the decision to assign the gang member to his cell or even that this person knew that he had been told to drop the mandamus petition.

Liability under § 1983 is "personal, based upon each defendant's own" conduct that violates another's constitutional rights. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Yet, the only people identifiable from the complaint and exhibits regarding this incident are Warden Anderson, who referred Albritton's grievance to the PREA compliance manager, Ms. Greer, and

10

the PREA investigator, Lt. Hickman. Albritton claims that Greer and Hickman "allowed PREA violations," but provides no supporting information, no specific actions taken, and does not identify the alleged PREA violations. He alleges that Anderson did not properly handle his complaint because Anderson was retaliating against him. He provides no facts to support this conclusory allegation, nor does he explain why referral of the grievance to PREA was not an appropriate response. Although Albritton has a First Amendment right to file a grievance or complaint, he has no constitutional right to compel government officials to respond to the complaint in a particular way. *See Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding that the right to petition protects only the right to address the government, but the government may refuse to listen or respond). Albritton's allegations are not sufficient to state a retaliation claim against any defendant for assigning a gang member to be his cell mate.

    2.    <u>Telling Gang Members that Albritton Complained about the Phones</u>

Albritton does not identify any defendant who told gang members that Albritton had complained about the gangs controlling access to the telephone. He does not state which gang member was told about his complaint. His allegation that this was done in retaliation is a conclusory statement, unsupported by factual allegations, and fails to state a claim for retaliation. *Ashcroft*, 556 U.S. at 678–79.

    3.    <u>Citing Albritton for Refusing to Return to his Cell</u>

Albritton alleges that: Lt. Landry filed a false disciplinary report against him; Captain Miller approved the report; and Hearing Officer Stanley excluded evidence "proving his innocence" and unfairly increased his sentence from 30 days loss of commissary to 45 days loss of commissary privileges. By itself, filing a false disciplinary charge against an inmate is not a proper basis for a constitutional claim. *Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016)

11

(unpublished).  However, the charge was allegedly in retaliation for Albritton's grievances and lawsuits, which can transform false charges into an actionable claim under § 1983.  *Id.*

Particularly in the context of prison discipline, retaliation claims must be viewed with some skepticism, because discipline, by definition, is retaliatory, in the sense that it is a response to prisoner misconduct.  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).  At this stage of the proceeding, though, a case should not be dismissed for failure to state a claim if the alleged facts and inferences therefrom could support a claim for relief.  *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978).

At the outset, Albritton's own pleadings and exhibits show that he did, in fact, disregard a direct order to return to his cell.  Although he may believe that his reasonable fear of being harmed was justification for refusing to comply with the order, he nonetheless refused the order.  For that reason, the disciplinary report was not false.  *See Donohue v. Lambert*, No. 7:13cv00397, 2014 WL 4825258, at *12  (W.D. Va. Sept. 25, 2014) (holding that purported justifications for committing an infraction do not render an inmate innocent of the charge).  Maintaining security and preserving internal order and discipline are essential to the operation of correctional facilities, and courts will not lightly interfere with execution of policies and rules that prison administrators determine are needed to preserve internal order and discipline.  *Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979).

That the disciplinary report was true does not fully resolve the issue, because it is well established that a government official may not misuse his power to retaliate against an individual for the exercise of a constitutional right; "[t]his holds true even when the act of the public official, absent the retaliatory motive, would otherwise have been proper." *Trulock*, 275 F.3d at

405–06. I must examine the facts alleged (not merely the legal conclusions) against the defendants accused of retaliation in connection with this disciplinary charge.

      a. Lt. Landry – Albritton alleges that Landry laughed at him on January 25, 2022, when told that Albritton feared for his life and safety and why, telling him to return to his cell so that Landry could watch the fight. When Albritton said that he did not wish to fight for staff's amusement, Landry wrote him up for disobeying a direct order. From Albritton's version of the conversation, which must be accepted as true during a motion to dismiss, one could infer that Landry had some malicious intent, giving Albritton an order that one who feared for his safety could not obey. Had Albritton obeyed the order and then been assaulted by the cellmate, a factfinder could find that Landry acted with deliberate indifference towards Albritton's safety. Combined with the allegation that Landry told him in February that they could make things worse if he kept filing complaints and lawsuits, Albritton has made a prima facie showing that the disciplinary report—even though proper—could have been undertaken with a retaliatory motive. Even though Adams has continued to file grievances and lawsuits, as the defense points out, that is not dispositive. Filing disciplinary charges against an inmate is an act that "would likely deter a person of ordinary firmness" from exercising his First Amendment rights. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017).

      b. Capt. Miller – Miller reviewed and signed the disciplinary charge prepared by Landry. Albritton has not stated any facts to suggest that Miller had threatened him or even knew about his grievances. His job was merely to review the facts alleged in the charge and sign the paperwork if the facts alleged supported the charge. Liability under § 1983 is based on personal misconduct that violates an inmate's rights, and no facts have been alleged to show that

13

Miller's actions were done with intent to interfere with Albritton's First Amendment rights. Thus, the claim against Miller must fail.

   c. Hearing Officer Stanley – Albritton has not stated any facts to support a claim that Stanley's actions as hearing officer were retaliatory. Conclusory assertions and legal conclusions do not suffice.

   Further, his complaints that Stanley disregarded his fear of being assaulted, denied the witness he requested, and imposed a sanction of 45 days loss of commissary privileges also fail to state any claim for violation of due process. Denial of commissary privileges is not a protected liberty or property interest under the Fourteenth Amendment, and the right to Due Process arises only when liberty or property interests are involved. *Shirley v. Woodson*, No. 7:19cv00535, 2020 WL 2263516, at *2–3 (W.D. Va. May 7, 2020). Albritton has failed to state a claim against Stanley for which relief can be granted.

  4. <u>Assigning Albritton a Transgendered Cellmate</u>

 Albritton alleges that McBride, Colna, and Landry confronted him on February 24 or 25, 2022, about his continued filing of grievances and lawsuits, saying that they could make things more difficult if he persisted in "making trouble with court action." Am. Compl. at 11. A little over a month later, on March 31, a transgender inmate was assigned as Albritton's cellmate. Albritton claims that this assignment was made in retaliation for his exercise of the First Amendment right to file grievances. He also claims that the assignment violated his First Amendment right to free exercise of his religion, which condemns homosexuality/transsexuality/sexual deviance as a violation of the "Holy Scriptures of the Lord Most High God." Plntf Br. in Opp. at 8. Albritton claims that despite the objections of Warden

14

Anderson, McBride, Colna, Landry, and the Cell Assignment Committee, he was removed from placement with the transgendered inmate. Am. Compl. at 12.

Again, he does not identify the person or persons responsible for placing the transgendered inmate in his cell. Presumably, the court is expected to infer that McBride, as Chief of Housing, and Colna, as Unit Manager, were responsible for the decision, but the court cannot read allegations into the complaint that have not been provided. Albritton fails to identify the individuals personally responsible for the housing decision, and he has failed to show with factual allegations that those individuals even knew about Albritton's grievances and lawsuits.

Further, he has failed to show that the cell assignment was an adverse action against him or that there is any causal connection between this action and Albritton's protected First Amendment activity. Unlike disciplinary action or knowingly placing an inmate with a violent gang member, one cannot say that assigning housing based on the VACORIS Cell Compatibility Assessment is an adverse action. Albritton does not allege that he had ever previously expressed to the unnamed RNCC officials that he felt his religious rights would be infringed if a transsexual cellmate were assigned to him, nor does he allege any fear for his personal safety. This claim of retaliation completely fails.

Albritton also alleges that being housed with a transsexual cellmate infringed his right to religious freedom under the First Amendment and under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc *et seq*. A practice burdens free exercise of religion if it puts pressure on a person to modify his behavior and violate his beliefs. *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). Under the First Amendment, as with other constitutional rights, when a prison practice impinges on inmates' constitutional rights, the practice is permissible if it is reasonably related to legitimate penological interests. *Turner v.*

*Safley*, 482 U.S. 78, 89 (1987). Even if the assignment of a transgender cellmate somehow burdened Albritton's free exercise of religion, there is little doubt that assigning compatible cellmates to maintain safety and order in a prison is a legitimate penological interest. Use of the VACORIS Cell Compatibility Assessment instrument is rationally related to that interest, satisfying one of the four balancing factors of the *Turner* test. *Id.* When considering the difficulty of maintaining security while housing inmates with differing criminal backgrounds, various gang affiliations, differing medical needs, and other considerations, not to mention limited space, prison administrators are in a far better position to anticipate security problems and determine solutions for best prison administration. *Id.* Albritton's allegations fall short of establishing any First Amendment free exercise of religion claim.

The RLUIPA imposes a higher burden on prisons to protect inmates' rights to the free exercise of their religion. If the plaintiff meets the burden of showing that an institution's practice "substantially burdens" his free exercise of religion, the institution must show that the burden is the least restrictive means of furthering a compelling government interest. 42 U.S.C. §§ 2000cc-1(a) & -2(b). Congress passed RLUIPA specifically to give confined persons greater protection of their free exercise rights than the Constitution requires. *Lovelace*, 472 F.3d at 186. For RLUIPA purposes, a state institution substantially burdens an inmate's free exercise rights when it puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* at 187. Housing an inmate with someone who does not share his religious beliefs, however, does not inhibit one's religious behavior, nor does it require one to engage in behavior against his will; mere exposure to non-Christians does not demonstrate any coercive effect on a Christian inmate's behavior. *Jehovah v. Clarke*, 789 F.3d 169, 180 (4th Cir. 2015).

Albritton alleges that he was forced "to suffer sexual harassment and extreme emotional distress" by being housed with a transgender inmate. Am. Compl. at 12. He gives no facts in support of the claimed sexual harassment, nor does he explain how any such harassment pressures him to change his worship habits or beliefs. Nor did he allege any sexual harassment in the grievance process. In his initial written complaint, made the same day the transgender inmate was assigned to his cell, Albritton stated that his "religious faith is being violated by . . . forcing me to be exposed and housed with a transgender . . ." Exs. to Br. in Opp. to Mot. to Dismiss at 19, ECF No. 42-1. In his regular grievance filed eleven days later, Albritton stated that he suffered extreme emotional distress because of "witnessing VDOC [and] RNCC sanctioning and assisting this male prisoner mutilate himself in violation of the Law of the Most High God." *Id.* at 20. He then claims that RNCC "is forcing homosexuality and transgenderism" on him. *Id.* However, as the Fourth Circuit Court of Appeals made clear in *Jehovah*, exposure to an inmate, even close exposure by being housed together, does not force Albritton to engage in conduct that violates his religion. He is not being asked to engage in homosexual activity; he is not being asked to condone homosexuality or transgenderism; he is not being required to change his moral beliefs about the topic. In short, he is exposed to someone he does not like, but that is not the same as burdening his free exercise rights. Because there has not been any substantial burden on Albritton's free exercise rights, there is no violation of RLUIPA.

### III. Conclusion

For the reasons stated, the defendants' Motion to Dismiss (ECF No. 36) will be denied in part and granted in part. The Motion to Dismiss the claim against Landry for issuing a disciplinary citation in retaliation for Albritton's constitutionally protected filing of grievances

17

and lawsuits will be denied at this stage. The Motion to Dismiss all other claims against all defendants will be granted.

An appropriate order will be entered this date.

Enter: February 28, 2024

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge