CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
4/26/2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **DEVINCHE JAVON ALBRITTON,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:22cv00306** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **LT. D. L. LANDRY,** | ) | **By: Robert S. Ballou** |
| **Defendant.** | ) | **United States District Judge** |

DeVinche Javon Albritton, a Virginia inmate proceeding *pro se*, has filed a Motion for Reconsideration of this court's prior order, entered February 28, 2024, dismissing Albritton's claims for alleged retaliatory assignment of a gang member to be his cell mate and later for an alleged retaliatory assignment of a transexual to be his cell mate, also violating his rights under RLUIPA and the First Amendment. For the reasons stated below, the motion will be denied.

There are three grounds for granting a motion for reconsideration: (1) to accommodate an intervening change in controlling law, (2) to consider new evidence not available at trial, or (3) to correct a clear error of law or prevent a manifest injustice. *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002). Albritton has not cited any intervening change in law, nor has he alleged new evidence. Accordingly, the court will address whether Albritton has demonstrated that the court made a clear error of law in its prior decision, noting that "mere disagreement" with a decision is insufficient to show clear error. *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993).

Albritton alleges that the court was unreasonable in finding that he failed to identify the person or persons responsible for assigning and placing the objectionable cell mates in his cell, because the defendants never provided the names of the Cell Assignment Committee members responsible for the decision, even though Albritton requested this information in discovery,

specifically in Interrogatory Numbers 15 and 16. Interrog., ECF No. 16 at p. 5 (filed Nov. 14, 2022). When the court ordered Albritton to provide identifying information for the "John Doe" defendants, he responded that he could not do so until the defendants answered his interrogatories, and he simultaneously filed his Motion to Compel on January 17, 2023. ECF. No. 25. The court granted the Motion to Compel on January 23, 2023, ordering the defendants to answer interrogatories within 30 days of filing responsive pleadings. ECF No. 26.

On February 27, 2023, the defendants filed their responsive pleading, a Motion to Dismiss for failing to state a claim for which relief could be granted. At the same time, defendants filed a motion to stay discovery until the Motion to Dismiss could be ruled upon. ECF No. 38. The court granted the motion to stay. ECF No. 40. Albritton filed a motion to lift the stay (ECF No. 44), which the court denied. ECF No. 46.

The Fourth Circuit allows "John Doe" claims to proceed past a Motion to Dismiss when it appears that the true identity of the unnamed party can be ascertained through discovery. *Goodwin v. Beasley*, No. 1:09cv151, 2010 WL 2539795, at *6 (M.D. N.C. June 18, 2010). However, the John Doe's involvement in the alleged wrongdoing must be clear from the complaint, and the wrongdoing alleged must be sufficient to state a claim for which relief may be granted. *Id.* In his Amended Complaint, Albritton alleged that "John Doe(s) Cell Assignment Committee" acted in concert with multiple other defendants, including McBride, Culna, and Landry, to retaliate against him for filing prison complaints, grievances, and civil suits. Plaintiff alleged that the first retaliatory act occurred on November 5, 2021, when "RNCC official(s) arranged to have a registered gang member moved in and assigned [as] his cell partner over his objections and pleas to desist." Amend. Compl., ECF No. 15, at 9. His amended complaint further alleged that the cell mate placement was made "in blatant and reckless disregard to the

knowledge and facts that plaintiff Albritton had already suffered a previous PREA assault by a registered gang member who had been assigned as his cell partner." *Id.* Apparently, Albritton believes that a "reckless" cell mate assignment is evidence of intent to retaliate. It is not.

As noted in the court's previous decision, a retaliation claim has three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity; (2) the defendant took an action that adversely affected that protected activity; and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. *Booker v. South Carolina Dep't of Corr.*, 855 F.3d 533, 537 (4th Cir. 2017). As previously held, there is no doubt that Albritton's various lawsuits and grievances are protected First Amendment activity, or that "recklessly" placing a gang member as his cell mate, if proved, could adversely affect Albritton. What the court could not find, however, is sufficient allegations to establish a causal link between Albritton's First Amendment activity and a personal action taken by a defendant in retaliation. The causation element of a retaliation claim asks what motivated a defendant's conduct. *Martin v. Duffy*, 977 F.3d 294, 300 (4th Cir. 2020). Albritton cannot make his case simply by saying "the defendants did this to me, so it must have been in retaliation for my complaints and lawsuits." He must allege and prove some facts from which a retaliatory motive on behalf of a particular person can at least be inferred.

Albritton jumped to the conclusion that he was being retaliated against the very day the alleged gang member was assigned as his cell mate. His grievance, dated November 5, 2021, said that placement of the gang member in his cell, despite prior assurances that this would not happen, "is clear proof and evidence of how I am set up to be harmed or victimized again! I am being retaliated against for my pending lawsuit and set up for adversity . . ." Grievance, Amend.

Compl. Ex. 13, ECF No. 15-1 at 37. Legal conclusions, however, are not facts. *West Virginia Div. of Corr.,* No. 2:15cv01544, 2015 WL 5443548 (S.D. W.V. Sept. 14, 2015).

Groups do not have intention or motivation; individual people do. Albritton did not identify any individual statements or actions from which one could infer that "John Doe"—or any other defendant—subjectively intended to retaliate against him. The decision to dismiss this claim was not based on lack of a name for John Doe, but on the absence of sufficient factual allegations to show that any individual defendant had an intent to retaliate.

Albritton's allegations regarding placement of the transgendered inmate as his cell mate are also insufficient. He stated that "on March 31, 2022, RNCC official(s) in further retaliation moved and assigned a transgender female prisoner as [his] cell partner over his objections and demands, despite having multiple empty cells in the same pod." Amend. Compl. at 12. He admits that he was later moved to a different cell "through the grace of . . . God" and over the objections of RNCC official(s): Warden Anderson, McBride, Colna, Landry, and the Cell Assignment Committee. He offers no documentation to support the allegation that Anderson, McBride, Colna, Landry, and the Cell Assignment Committee objected to him being moved. Indeed, if the Warden, Unit Manager, and Cell Assignment Committee all objected to moving Albritton, he would not have been moved. As noted by the Supreme Court, when considering dismissal of a *pro se* prisoner's civil rights action, courts have

> not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. . . . Examples . . . are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.

*Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989). Because the allegation that he was moved to another cell over everyone's objection is patently incredible, there is no inference to be drawn in

Albritton's favor from that allegation. Nothing he has alleged raises an inference that any individual defendant, including John Doe, had any intent to retaliate. Thus, he has not stated a plausible claim against John Doe.

Albritton's "free exercise of religion" claims fare no better. He argues that there was no penological interest being furthered by placing a transgender inmate in his cell. This court's prior opinion already explained the penological interest in using a Cell Compatibility Assessment instrument in making compatible cell assignments and maintaining institutional security.

More importantly, the court found no impingement on Albritton's constitutional right to free exercise of religion. The Free Exercise Clause of the First Amendment prohibits the government "from interfering in people's religious *practices* or *forms of worship*." *Free Exercise Clause*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). The exercise of religion involves "the performance of (or abstention from) physical acts: assembling with others for a worship service, participating in sacramental use of bread and wine, proselytizing, abstaining from certain foods or certain modes of transportation." *Employment Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 877 (1990). Assignment of a transexual cell mate did not require Albritton to endorse his cell mate's lifestyle, nor did the assignment prohibit Albritton from worship, prayer, or reading of spiritual texts. That he finds his cell mate's gender identity offensive is not sufficient to violate his free exercise of religion. As the Supreme Court has noted:

> A broad range of government activities . . . will always be considered essential to the spiritual well-being of some citizens, often on the basis of sincerely held religious beliefs. Others will find the very same activities deeply offensive, and perhaps incompatible with their own search for spiritual fulfillment and with the tenets of their religion. The First Amendment must apply to all citizens alike, and it can give to none of them a veto over [policies or practices] that do not prohibit the free exercise of religion.

*Lyng v. Northwest Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 452 (1988).

For these reasons and those stated in this court's original opinion (ECF No. 62), the Motion for Reconsideration (ECF No. 71) will be denied.

An appropriate order will be entered this date.

Enter: April 26, 2024
/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge