CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

February 28, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DeVINCHE JAVON ALBRITTON, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:22cv00306 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| LT. D. L. LANDRY, | ) | By: Robert S. Ballou |
|     Defendant. | ) | United States District Judge |

Following a jury trial in this matter on May 16-17, 2024, the jury's verdict in favor of the defendant was entered. Plaintiff immediately made a verbal motion to set aside the verdict, which was followed by his timely written motion to vacate and set aside the verdict as contrary to the evidence and law. ECF No. 105. The defendant filed his response objecting to the motion, and the matter is now ripe for decision. For the reasons discussed below, the plaintiff's motion will be denied.

## I. The Trial

The sole issue on liability was whether defendant Landry had charged plaintiff Albritton with a disciplinary offense on January 25, 2022, in retaliation for Albritton's exercise of his First Amendment right to file grievances and lawsuits against the Virginia Department of Corrections (VDOC) institutions, including River North Correctional Center (RNCC), and other correctional officers. Trial began on May 16, 2024, following qualification of a jury.

Albritton testified that he had been housed at Sussex II, a facility within the VDOC, in April 2020 when he was sexually assaulted by his cell mate, a gang member. He filed an administrative complaint under the Prison Rape Elimination Act (PREA), grievances, and ultimately, a lawsuit against the Warden and other officers at Sussexx II. In late March 2021, he was transferred to RNCC. He spoke with his counselor and other staff about the situation at

Sussex II, including his desire not to be housed with any gang members, for fear of another assault. He was housed in a single cell for the first six months he was there. He testified that he filed requests, informal complaints, grievances, and lawsuits if he felt that his rights were being violated, and he received pressure to withdraw one of his grievances and lawsuits. After that, a gang member was assigned to his cell.

He introduced documentary evidence supporting his testimony, including Offender Requests dated June 17, 2021; August 2, 2021; and August 4, 2021; two Written Complaints; a Grievance about the education policy; and a Grievance about being housed with a gang member. He stated that Landry was aware of these grievances and aware of the assault at Sussex II. He testified that Landry and others had complained about how many grievances he filed and had told gang members that Albritton had filed a complaint about gang members preventing others from having access to the phone during recreation time. Shortly after that complaint, his new gang-affiliated cell mate told him he was going to have "to fight or die."

On January 25, 2022, the cell mate told Albritton to "check out," prison slang for a threat to assault him if he did not get out of the cell. Albritton pretended he was going to pick up his commissary items to get out of the cell, then told the booth officer that he feared for his life, and the officer called Lt. Landry. Because the cell block was going on lock-down, Landry told Albritton to get in his cell. Albritton did not go into his cell, telling Landry that he was afraid for his life if he went back in there. He said that Landry told him to go in and fight the cell mate because Landry wanted to watch and see who would win. Albritton responded that he would not fight for staff's amusement. Landry escorted Albritton to segregation ("the hole"), and Albritton thought it was for protective custody. Later that afternoon, however, he received a disciplinary charge for refusing a direct order to return to his cell.

At the hearing on his disciplinary charge, Albritton requested witnesses to confirm that he had told Landry and other officers that he was in fear for his life and safety, but the hearing officer refused to call the witnesses, stating that they were not relevant.  He was found guilty of the disciplinary violation.  Within the week, SIU investigators contacted Albritton to state that they had intercepted a communication regarding a hit against him by gang members at RNCC.  They did not provide him any documentation, however, because the investigation was ongoing.  Based on that information, Albritton appealed his disciplinary conviction, but the appeal was denied.

Nicholas Wright, an inmate at Keen Mountain Correctional Center, testified by videoconference from the prison, pursuant to Albritton's subpoena.  He testified that he had been incarcerated at RNCC from 2016 to 2013, when he was transferred to Keen Mountain.  During part of his time at RNCC, he was housed in the same pod with Albritton, and he knew Lt. Landry.  Wright testified that he had not spoken to anyone about the case prior to his testimony.  At RNCC, Wright was a hearing advisor, if one was requested by an inmate at disciplinary hearings.  In that capacity, he worked closely with some of the staff.  He recalled that Landry had complained about Albritton "writing up paperwork all the time," including complaints about who he was housed with and gang members running the pod.  He also recalled that Albritton received a disciplinary charge for not going into his cell.

Defendant Landry testified that he has worked at RNCC for 11 years.  On January 25, 2022, inmate Albritton said he would not go back into his cell.  He took Albritton to a shower stall until the shift commander could approve a transfer to the Restrictive Housing Unit.  Landry did not recall Albritton giving any reason for not going into his cell, nor did he recall Albritton saying he was in fear for his life and safety.  He believes he would remember if Albritton had

3

said anything like that.  Landry flatly denied ever telling Albritton to fight with his cell mate or any other inmate.

After both parties had rested, the court instructed the jury on the law applicable to the case.  The jury retired to the jury room to begin deliberations at 3:50 p.m.  They returned to the courtroom twice to ask questions, demonstrating the high level of attentiveness they were giving to the issues.  At 6:45 p.m., the jurors instructed the clerk that they wished to retire for the evening and return the next day to continue deliberations.  On May 17, 2024, the jury retired to resume deliberations at 9:00 a.m., and returned with a verdict at 9:20 a.m.

## II.  DISCUSSION

Motions to set aside a verdict are governed by Rule 59 of the Federal Rules of Civil Procedure.  The three circumstances under which a district court may grant the motion are: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.  *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (internal quotation marks and citation omitted).  Because there has been no change in the controlling law since Albritton's trial, and there is no new evidence, Albritton's argument is that the jury verdict was "contrary to the facts, evidence, and law resulting in a manifest injustice."  Pl's Mot. to Set Aside at 1, ECF No. 105.

Albritton argues that he presented "overwhelming evidence" of the retaliatory disciplinary charge.  The evidence is uncontested that Albritton filed numerous complaints, grievances, and lawsuits.  Twelve of his 15 documentary exhibits were copies of complaints, grievances, appeals, and court pleadings.  That evidence certainly shows that Albritton engaged in constitutionally protected First Amendment activity, which the defendant never disputed.  Nor

4

is there any dispute that Landry issued a disciplinary charge to Albritton; Landry testified that he issued the charge, and Albritton introduced a copy of it into evidence. Nor was there any dispute that Landry was acting under color of state law.

The disputed factual issue in the trial is whether there was a *causal relationship* between Albritton's grievances and the disciplinary charge. *See* Jury Instr. 12, ECF No. 98 at 12. This issue requires the factfinder to decide whether Landry was motivated to file the disciplinary charge because Albritton had been filing grievances. *Martin v. Duffy*, 977 F.3d 294, 300 (4th Cir. 2020). A person's motivation, like intent, can rarely be shown by direct evidence; motivation often must be inferred from circumstances. As the court indicated in its prior opinion denying Landry's Motion to Dismiss, if the jury believed Albritton's testimony that he told Landry he was in fear for his life and that Landry told him to go back in the cell so Landry could watch the fight, that conversation, combined with Landry's knowledge of Albritton's grievance activities, *could* support a verdict in Albritton's favor. Certainly, that is the inference Albritton hoped the jury would draw. However, that is not the only inference that could be drawn from the evidence.

Albritton's Motion to Set Aside overlooks other inferences that could be drawn from the evidence and overlooks those areas in which Landry's testimony contradicted Albritton. Some of Albritton's complaints, grievances, and ongoing litigation predated his arrival at RNCC; Landry was not a person that any complaint, grievance, or lawsuit had been directed against before the disciplinary complaint. A factfinder could reasonably conclude that Albritton's protected activity was not sufficiently bothersome to be a motive for Landry to file a false disciplinary complaint, even if Landry had made statements to Wright about Albritton "writing up paperwork all the time."

5

Second, although Landry testified that he did not remember the details of his conversation with Albritton, he also said he thought he would remember if Albritton had claimed being in fear for his life. The jury could have credited Landry's testimony and decided that Landry would remember that, and therefore, they could disbelieve Albritton's testimony that he said it. Landry's testimony was stronger when he denied telling Albritton to fight the inmate. That testimony flatly contradicted Albritton's testimony, and if believed by the jury, was sufficient to support the jury verdict in favor of the defendant. It is the jury's function to determine which witnesses to believe and to resolve conflicts in the evidence, and if any evidence supports the verdict, the court may not set it aside. *Carter v. Lambert*, 435 S.E.2d 403, 406 (Va. 1993); *see also United States v. Robinson*, 55 F.4th 390, 404 (4th Cir. 2022) ("Credibility determinations are within the sole province of the jury and are not susceptible to judicial review.")

### III. Conclusion

For the reasons stated, Albritton's Motion to Vacate Set Aside the Jury's Verdict will be denied. An appropriate order will be entered this day.

Enter: February 28, 2025

*/s/ Robert S. Ballou*
Robert S. Ballou
United States District Judge